**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **DAMARIS JUSTINIANO, AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF WILFREDO JUSTINIANO, JR.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **STEPHEN WALKER and TIMOTHY P. ALBEN** | ) | **C.A. 15-11587-NMG** |
| **Defendants.** | ) | |

**DEFENDANT TIMOTHY P. ALBEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNTS THREE AND FOUR OF PLAINTIFF'S COMPLAINT**

Defendant Timothy P. Alben ("Col. Alben") pursuant to Fed. R. Civ. P. 12(b)(6) respectfully requests that this Court dismiss plaintiff's Complaint against Col. Alben in its entirety. As grounds therefore, Col. Alben states: the Court should dismiss Count Three because 1) plaintiff has failed to allege sufficient facts that Col. Alben has acted with deliberate indifference to any constitutional rights afforded to the plaintiff's decedent 2) he is entitled to qualified immunity on plaintiff's Section 1983 claims; and the Court should dismiss Count Four, a wrongful death claim predicated on Col. Alben's negligence, because Col. Alben, as a public employee acting within the scope of his employment for the Massachusetts State Police, is immune, pursuant to the Massachusetts Tort Claims Act (M.G.L. c. 258) from liability.

**RELEVANT BACKGROUND INFORMATION**

Plaintiff Damaris Justiniano alleges that she is the personal representative of the estate of

Wilfredo Justiniano, Jr. (the decedent) and brings this suit against Massachusetts State Police Trooper Stephen Walker and his supervisor, Col. Alben. *See generally*, Complaint, ¶¶5-7. Plaintiff alleges that on June 14, 2013 defendant Walker responded to a "911" call for medical assistance at Route 28 in Milton where the decedent's motor vehicle was pulled over to the side of the road. Id. at ¶ 10-11. The 911 caller had approached the decedent's vehicle and believed he "was having a heart attack." Id. Decedent had a history of mental illness and was a diagnosed schizophrenic. Id. at ¶ 9. Defendant Walker had no knowledge of the decedent's mental illness. Upon his arrival, Walker observed the decedent standing between his, and the 911 caller's, vehicle. Id. at ¶ 13. As Walker got out of his car and approached the decedent, the decedent instructed Walker to kill him. Id. at ¶ 20. The decedent further stated he was an undercover cop and Walker needed to kill him. Id. at ¶ 21. The decedent then threatened to kill Walker and began to approach Walker. Id. Walker pepper sprayed the decedent but some of the pepper spray was blown into Walker's eyes by the wind. Id. at 22. The pepper-spray jeopardized Walker's vision and he began to back pedal away from the decedent. Id. Plaintiff further alleges that Walker suddenly pulled his gun and shot and killed the decedent. Id. There is no allegation that Col. Alben appeared on the scene or was anyway involved in the events leading to the decedent's death.

Plaintiff alleges that the Massachusetts State Police, under the direct supervision of Col. Alben, violated the decedent's constitutional rights by failing to institute a policy for dealing with mental health crises without using lethal force, or failing to train officers to avoid the use of lethal force during mental health crises (¶58); for failing to train troopers dealing with mental health crises on techniques to de-escalate confrontations (¶59); for failing to provide troopers with non-lethal weapons (other than pepper spray) (¶60); for failing to install video cameras in

police cruisers which allegedly "promotes and encourages the use of excessive force with impunity"¶ (61). Col. Alben was later allegedly quoted as saying "in terms of negotiating with someone with mental health [issues], there is not a great deal of training in law enforcement. If there is a shortcoming in any system it's the fact that there aren't those kinds of resources devoted to training." Id. at ¶ 66. Plaintiff further alleges that other police departments across the country have instituted policies on how to deal with mentally ill people. Id. at ¶ 63.

## ARGUMENT

### I. Count Three of Plaintiff's Complaint Alleging Col. Alben Violated Section 1983 Must Be Dismissed Because Plaintiff has Failed to Allege Sufficient Facts that Col. Alben Acted With Deliberate Indifference.

In Count Three, plaintiff alleges that Col. Alben violated the Fourth and Fourteenth Amendments and seeks damages pursuant to 42 U.S.C. §1983 ("Section 1983"). Compl. ¶¶55-71. While the Plaintiff alleges that Col. Alben so violated these amendments, the Complaint assigns the conduct to the Massachusetts State Police, under the direct supervision of Col. Alben. Id. Specifically, the Complaint alleges the State Police, under the supervision of Col. Alben, violated these rights by: (1) failing to implement a policy for "dealing with mental health crises without using lethal force;" (2)failing to train officers in how to avoid the use of lethal force during mental health crises; (3) having an affirmative policy that treats people in a mental health crisis as violent criminals and subjecting them to lethal force; (4) failing to train troopers on how to de-escalate situations with the mentally ill; (5) failing to provide non-lethal or less-lethal weapons to be used in "cases where an officer deems a person assaultive"; and (6) failing to implement a policy of employing video cameras within cruisers. Id. When a plaintiff brings an action pursuant to Section 1983, that plaintiff "must demonstrate that (1) a person acting under color of State law committed the conduct complained of and (2) the conduct deprived the

plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Johnson v. Summers, 411 Mass. 82, 86, (1991).

A supervisory employee, such as Col. Alben, may not be held vicariously liable pursuant to Section 1983 based on a theory of respondeat superior, but may be liable for his or her own acts or omissions. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-82 (1st Cir. 1994). However, a "supervisor may be held liable for what he does (or fails to do) *if his behavior demonstrates deliberate indifference* to conduct that is itself violative of a plaintiff's constitutional rights." Id. at 582 (emphasis added). Even if a plaintiff satisfies this burden, the plaintiff must also establish "a causal link" that connects "the supervisor's conduct to the subordinate's violative act or omission." Id. The "deliberate indifference" a plaintiff must demonstrate to prevail on a Section 1983 claim on the theory of supervisory liability is stringent and akin to "criminal recklessness." Snell v. DeMello, 44 F. Supp. 2d 386, 390-91 (D. Mass. 1999)(citing Farmer v. Brennan, 511 U.S. 825, 839 (1994)); see also Manarite By & Through Manarite v. City of Springfield, 957 F.2d 953, 955-56 (1st Cir. 1992)("While this mental state can aptly be described as 'recklessness,' it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge [or wilful blindness] of impending harm, easily preventable."). This standard goes beyond mere negligence and instead requires that "the supervisor himself subjectively drew the inference that there was an excessive risk of harm and then did nothing to prevent or forestall it from materializing." Id. In instances where the plaintiff seeks liability for serious harm or death, courts have required the demonstration of deliberate indifference by showing "(1) an unusually serious risk of harm …, (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk." Manarite By &

Through Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir. 1992). "[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [State] actor disregarded a known or obvious consequence of his action." County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997).

A party ordinarily must point to a "[a] pattern of similar constitutional violations by untrained employees" to demonstrate the deliberate indifference required to prevail on a failure to train claim under Section 1983. *See* Connick v. Thompson, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011). The "deliberate indifference" standard is stringent, as anything less would result in a standard more akin to respondeat superior, which the Supreme Court is determined to avoid. *See* id; City of Canton, 489 U.S. at 385. Without a pattern of similar constitutional violations, the policymaker responsible for training or supervising the State Police troopers in question could hardly be said to have notice that a policy in question is failing, and, thus, could hardly be said to be acting with deliberate indifference to the constitutional rights of Plaintiff. See Connick, 131 S.Ct. at 1360. ("Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.").

The plaintiff's allegations against Col. Alben amount to three separate types of claims. The first claim comprises a series of specific failures that can be summarized as a failure of the Massachusetts State Police, under the direct supervision of Col. Alben, to implement a training program for state police interactions with the mentally ill (i.e. plaintiff alleges that the State Police, under Col. Alben's direct supervision, (1) failed to implement a policy for "dealing with mental health crises without using lethal force;" (2)failed to train officers in how to avoid the use of lethal force during mental health crises; (3) had an affirmative policy that treats people in a

mental health crisis as violent criminals  and subjecting them to lethal force; and (4) failed to train troopers on how to de-escalate situations with the mentally ill, and (5) that Col. Alben refused to change these policies).  Compl. ¶¶55-59, 68.  The second claim alleges that the Massachusetts State Police, under the direct supervision of Col. Alben, failed to provide non-lethal or less-lethal weapons to be used in "cases where an officer deems a person assaultive." Id. at ¶60.   Finally, the plaintiff alleges that the Massachusetts State Police, under the direct supervision of Col. Alben failed to implement a policy of employing video cameras within cruisers. Id. at ¶61.

A. *The Complaint fails to allege that Col. Alben acted with deliberate indifference towards any constitutional right.*

The plaintiff relies on conclusory statements and bare allegations to satisfy the elements of his claim against Col. Alben that he either failed to implement training policies for the state police or, alternatively, established policies[1] that violated the rights of individuals.  This approach is insufficient, as the plaintiff "must allege facts to support his supervisory claim…it is not sufficient for him to simply formalistically recite the necessary elements of such a claim." Williams v. Bisceglia, 2015 WL 4462132, at *3 (D. Mass. July 21, 2015)(citing Ashcroft, Iqbal, 556 U.S. 662, 681 (2009)).  Specifically, the Complaint fails to put forth facts indicating any problem with the training policies and procedures employed by the Massachusetts State Police at the time of Mr. Justiniano's death.  For example, the Complaint mentions a well-documented increase across the country in the number of situations where mentally ill citizens died after interactions with the police.  Compl. ¶62.  However, the plaintiff does not point to any other cases or instances within Massachusetts which would have put Col. Alben on notice that the

---

[1] The plaintiff offers no proof of any such policy in the Complaint, and the Court should thus disregard this allegation.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558-562 (2007).

training or policies of the State Police with regards to its troopers' interactions with the mentally ill should be changed.

The First Circuit Court of Appeals specifically highlighted a defendant's lack of notice of any problems with a training program, and the lack of any evidence that the defendant should have known of possible problems, when deciding that a plaintiff had failed to meet its burden on supervisory liability under Section 1983. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92-93 (1st Cir. 1994). Further, the Supreme Court has held that it is not sufficient to allege that a "reasonable person should have known of the risk" and instead requires that to meet the deliberate indifference standard, the official must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). In another case, this Court determined that a conversation between an inmate and prison official during which the inmate informed the official of threats he received from other inmates in his housing unit was insufficient to show that the official was "criminally reckless and therefore deliberately indifferent" because there was no showing that the official subjectively believed the inmate faced danger. Snell v. DeMello, 44 F. Supp. 2d 386, 391 (D. Mass. 1999)("Specifically, there is nothing in the record which indicates that prior to the alleged assault…any of the defendant supervisors either knew of a substantial, serious risk to Snell's physical safety or harbored a subjective belief that he faced potential injury at the hands of other inmates in Housing Unit C.").

Further, the First Circuit has also held that to prove deliberate indifference a plaintiff must also show a "failure to take easily available measures to address the risk." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998)(citing Manarite v. City of Springfield, 957 F.2d 953, 956 (1st Cir.1992)). Put another way, deliberate indifference requires "actual knowledge of

impending harm, easily preventable." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 498 (1st Cir. 2011). As pled, the Complaint fails to establish that the implementation of any such training programs would render the alleged constitutional violations "easily preventable." Further, the statement of Col. Alben attributed to him in the Complaint similarly fails to establish that constitutional violations the mentally ill could potentially suffer during confrontations with police would be "easily preventable" with proper training. See Compl. ¶66. As a result, the plaintiff cannot meet her burden to show that Col. Alben acted with deliberate indifference.

The plaintiff has also failed to plead that Col. Alben acted with deliberate indifference with regards to his decision to decline the implementation of less-lethal weapons. As discussed above, the Complaint fails to assert any facts that would put Col. Alben on notice that any problem concerning the State Police's failure to offer less-lethal weapons other than pepper spray to its troopers could potentially violate the constitutional rights of citizens. See Farmer, 511 U.S. at 837; Leavitt, 645 F.3d at 498. In fact, the Complaint indicates that the decision to abandon the use of Tasers and similar instruments came after a training session in which an officer was seriously injured. See Compl. ¶65. That allegation is the sum total of the facts concerning the decision to use, or not use, less-lethal weapons. This lone allegation falls short of the "deliberate indifference," akin to criminal recklessness, necessary for the plaintiff to carry her burden in a Section 1983 claim. See Snell, 44 F. Supp. 2d at 390-91. On its face, the Complaint pleads that Col. Alben considered the use of a less-lethal option, implemented at least one training session, and then abandoned it when one of a member of the State Police was injured using it during a training session. See Compl. ¶65. The Complaint thus reveals that at least some rational deliberation went into the decision which indicates that Col. Alben was not acting with criminal recklessness at the time he made that decision. See Snell, 44 F. Supp. 2d at

390-91. Further, the Complaint is devoid of any facts as to any pressing need for less-lethal weapons, such as Tasers, to be implemented. Additionally, the Complaint is devoid of any facts that pepper spray was not sufficient or an otherwise inappropriate tool for the State Police. The plaintiff frames the decision to abandon less-lethal weapons after an officer was injured as a decision based on officer safety, rather than citizen safety. Compl. ¶65. However, the plaintiff's characterization is not necessarily mutually exclusive, as it is just as likely that Col. Alben could have decided that the less-lethal weapons were difficult to use and unreliable after an officer was injured, and thus equally a threat to citizen safety as well. Given that the plaintiff has offered no facts indicating that Col. Alben had any type of notice that a need for less-lethal weapons existed, and that the pleadings indicate a rational basis for his decision, Col. Alben could not have acted with deliberate indifference regarding his decision to abandon less-lethal weapons, as pled in the Complaint.

A similar analysis applies to the plaintiff's allegation that Col. Alben violated some constitutional right by not implementing the use of video cameras in all State Police Cruisers. Again, the plaintiff offers no facts or information that would put Alben on reasonable notice that there was such a need for cruisers equipped with video cameras. The plaintiff's assertion in paragraph 61 of the Complaint is indicative of the conclusory statements the plaintiff relies upon: "The absence of such cameras promotes and encourages the use of excessive force with impunity." This allegation is a wholly conclusory statement which is insufficient to defeat a motion to dismiss. See Twombly, 550 U.S. at 558-562. The plaintiff provides no assertions or allegations rooted in fact that would show Col. Alben's conduct to be deliberately indifferent; therefore, this claim concerning the in-cruiser video cameras should be dismissed.

B. *The Complaint fails to allege causation between the failings of the State Police and the death of the decedent.*

Even if the plaintiff had alleged sufficient facts that Col. Alben acted with deliberate indifference, which she did not, she would also be required to show causation: "To succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). This causation requirement is "stringent," as "cause-in-fact does not suffice to establish the required affirmative link. If that were the test, every depredation of this sort would give rise to [supervisory] liability, for every § 1983 claimant harmed by such employee conduct could 'point to something the [supervisor] 'could have done' to prevent the unfortunate incident.'" Clancy v. McCabe, 441 Mass. 311, 321, 805 N.E.2d 484, 492 (2004) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989).

The Complaint is devoid of any facts indicating that the lack of "less-lethal" weapons, video cameras in the cruiser or a lack of training caused the ultimate death of the decedent. The precedent quoted above establishes the highly stringent causal connection required for a plaintiff prevail on a claim of supervisory liability based on deliberate indifference, and the Complaint does not meet this burden. For the foregoing reasons, Count Three against Col. Alben should be dismissed.

## II. The Plaintiff's Count Three Should Also Be Dismissed Because Col. Alben Is Entitled To Qualified Immunity From Suit In The Instant Case

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). It "requires merely that

a reasonable official could believe that his conduct was lawful," Olmeda v. Ortiz-Quinonez, 434 F.3d 62, 65 (1st Cir. 2006).

Qualified immunity is "an *immunity from suit*, rather than a mere defense to liability;" and as such must be resolved early in the proceedings to avoid loss of that right. Saucier v. Katz, 533 U.S. 194, 200-201 (2001) (emphasis in original). Qualified immunity "is designed to mitigate the social costs of exposing government officials to personal liability—costs such as 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.'" Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982)).

To determine whether a defendant has qualified immunity, "[a] court must decide: (1) whether the facts . . . shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendants' alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009). These two parts of the analysis may be considered in either order, as "there are cases in which it is plain that a constitutional right is not clearly established" and judicial resources can be preserved by avoiding "an essentially academic exercise" in evaluating whether a constitutional violation in fact occurred. Pearson v. Callahan, 555 U.S. 223, 237 (2009).

"Whether a right is clearly established is an issue of law for the court." Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 9 (1st Cir. 2001). "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014). "In order to show that a principle is clearly established in the pertinent sense, a plaintiff ordinarily must identify 'cases of controlling authority . . . at the

time of the incident . . . [or] a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.'" Bergeron v. Cabral, 560 F.3d 1, 11 (1st Cir. 2009) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S.Ct. at 2083.

The Supreme Court has "'repeatedly told courts ... not to define clearly established law at a high level of generality,' since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, 134 S.Ct. at 2023 (quoting al-Kidd, 131 S.Ct. at 2074) (defendants would be entitled to qualified immunity because there were no controlling cases or robust consensus of cases that clearly established the unconstitutionality of using lethal force to end a high-speed car chase under the Fourth Amendment); Lane v. Franks, 134 S.Ct. 2369, 2382-84 (2014) (defendant entitled to qualified immunity for firing government employee on account of testimony the employee gave, under oath and outside the scope of his ordinary job responsibilities, because it was not clearly established that testimony was entitled to First Amendment protection); al-Kidd, 131 S.Ct. at 2084 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") Otherwise, "Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability..." Anderson v. Creighton, 483 U.S. 635, 639 (1987).

A. *There is No Constitutional Right to Be Policed by Law Enforcement Officers Who Have Received Training in Dealing With the Mentally Ill*

As discussed, the plaintiff makes a series of allegations against the Massachusetts State Police and Col. Alben that can be summarized as a failure to implement a training program for

state police interactions with the mentally ill (i.e. plaintiff alleges that the State Police, as a result of Col. Alben's decision making, (1) failed to implement a policy for "dealing with mental health crises without using lethal force;" (2)failed to train officers in how to avoid the use of lethal force during mental health crises; (3) had an affirmative policy that treats people in a mental health crisis as violent criminals and subjecting them to lethal force; and (4) failed to train troopers on how to de-escalate situations with the mentally ill). Compl. ¶¶55-59. Because the Supreme Court requires a specific determination of the right at issue, it appears that the plaintiff essentially alleges that citizens have a constitutional right to be policed by law enforcement officials trained in how to interact with the mentally ill. See Plumhoff, 134 S.Ct. at 2023 (quoting al-Kidd, 131 S.Ct. at 2074).

No such constitutional right to be policed by law enforcement officers trained in how to interact with the mentally ill is clearly established. Indeed, the First Circuit has previously decided that no such right exists. Februs-Rodriquez v. Betancourt-Lebron, 14 F3d. 87 (1994). In Februs-Lebron, two police officers in Puerto Rico, along with a municipal police officer, severely beat a "mentally retarded" man during his arrest, rendering him a quadriplegic. Id. at 90. Plaintiff sued the officers' superintendent and the mayor alleging that as supervisors they exhibited deliberate indifference by failing to train and supervise the officers on how interact with mentally handicapped persons. Id. at 90. Plaintiff even had an affidavit from a criminologist/psychologist expert who claimed the supervisors were negligent in failing to train officers on how to deal with mentally handicapped individuals. Id. In determining that the supervisors were entitled to qualified immunity, the First Circuit held that "we do not find that the need to extensively train officers about how to identify and deal with mentally handicapped persons is so obvious that failure to give this training supports a finding of reckless or callous

indifference to constitutional rights." Id. at 93, n.6. Thus, the rights at issue were not clearly established at the time of the Febus-Rodriguez decision. For that reason, Col. Alben is entitled to qualified immunity as to this claim. See id; Plumhoff, 134 S.Ct. at 2023.

B. *There is No Constitutional Right to Be Policed by Law Enforcement Officers Who Have Access to Less-Lethal Weapons Other Than Pepper Spray and There is No Constitutional Right Requiring Video Cameras to be Installed in Police Cruisers.*

The plaintiff has asserted that Col. Alben violated the constitutional rights of Mr. Justiniano by failing to equip and train troopers of the State Police with less-lethal weapons such as tasers and by failing to install video cameras in the State Police cruisers. Comp. ¶¶60-61. While plaintiff may try to present these arguments as a more generalized assertion of the rights protected by the Fourth and Fourteenth Amendment, the Supreme Court requires a particularized, specific analysis. See Plumhoff, 134 S.Ct. at 2023. Col. Alben is aware of no cases establishing any such right requiring the implementation of less-lethal weapons or video cameras within cruisers. With regards to so-called “less-lethal” weapons, the lack of any such authority may stem from the actual lethalness of such weapons: plaintiffs have alleged constitutional violations for excessive force when officers utilized “less-lethal” weapons, thus suggesting these less-lethal weapons are not the panacea the plaintiff submits them to be. See Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001); Mattos v. Agarano, 661 F.3d 433, 452 (9th Cir. 2011)(police officers entitled to qualified immunity because “there was no Supreme Court decision or decision of our court addressing” the use of a taser in dart mode, and, thus, alleged constitutional violation was not clearly established.). Similarly, no cases appear to establish a constitutional right requiring the implementation of video cameras in police cruisers. As a result, the plaintiff has failed to establish that Col. Alben violated a clearly established constitutional

right regarding either the implementation of less-lethal weapons or cruiser video cameras, so he is entitled to qualified immunity, and the Court must dismiss the claims in Count Three.

## III. Plaintiff's State Law Wrongful Death Claim (Count Four) Against Alben Must Be Dismissed Because Public Employees Are Immune From Suit for Damages Arising Out Of Alleged Negligent Conduct.

Plaintiff's Count Four seeks damages from Col. Alben under G.L. c. 229, §2 for the alleged wrongful death of the deceased, Wilfredo Justiniano. Compl. ¶86. The plaintiff grounds this liability in Col. Alben's failure to allegedly properly equip state troopers with non-lethal or less-lethal weapons, provide video cameras in state police cruisers, and adequately implement a training program for troopers in how to respond to crises involving the mentally ill. See id. at 73-85. Thus, the plaintiff seeks damages for the negligent or wrongful acts of Col. Alben. Id. While the plaintiff pursues damages pursuant to G.L. c. 229, §2, no such relief can be found in that statute, as G.L. c. 258, the Massachusetts Tort Claims Act ("MTCA"), provides the "exclusive remedy" for "personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment...." Maraj v. Massachusetts, 836 F. Supp. 2d 17, 31 (D. Mass. 2011)(citing G.L. c. 258, §2). While G.L. c.258, §2 ("Section 2") provides the exclusive remedy for such conduct, Section 2 also provides that "no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." G.L. c.258, §2; see also McNamara v. Honeyman, 406 Mass. 43, 46 (1989)(Section 2 also immunizes public employees in cases of alleged gross negligence).

Given the immunity thus established for public employees in Section 2, the immunity analysis then turns to an examination of whether Col. Alben was in the scope of his employment

at the time of the allegedly negligent conduct. To determine if an employee is in the scope of his or her employment, courts look to the common law test which analyzes whether "the act was in furtherance of the employer's work," with the factors to consider including "whether the conduct in question is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether it is motivated, at least in part, by a purpose to serve the employer." Clickner v. City of Lowell, 422 Mass. 539, 541-42 (1996)(internal citations omitted).

In the instant case, the conduct complained of was squarely within the scope of Col. Alben's office and employment. All of the plaintiff's allegations concerning Col. Alben's conduct fall squarely within official decisions or policies he promulgated, or, alternatively, official decisions and policies he failed to promulgate. See Compl. ¶¶73-77. Throughout Count Four, the plaintiff equates the policies of the Massachusetts State Police with the decisions of Col. Alben, thus moving the complained of conduct squarely within the scope of Col. Alben's employment. See Clickner, 422 Mass. at 541-42. Consequently, this Court must dismiss Count Four to the extent it seeks damages arising out of Section 2, as Col. Alben is immune from such suit.

Respectfully submitted,

TIMOTHY ALBEN
By his Attorneys,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Edmund Donnelly
Edmund Donnelly, BBO#676889
Assistant Attorney General
Government Bureau/Trial Division

One Ashburton Place, Room 1813
Boston, MA 02108
(617) 727-2200, Ext. 2048
Ed.donnelly@state.ma.us

Date: October 19, 2015

**CERTIFICATE OF SERVICE**

I, Edmund Donnelly, Assistant Attorney General, hereby certify that I have this day, October 19, 2015, served the foregoing document, upon all parties, by electronically filing to all ECF registered parties and by sending a copy, first class mail, postage prepaid to all unregistered parties.

/s/ Edmund Donnelly ____
Edmund Donnelly, BBO#676889