**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DAMARIS JUSTINIANO, as the personal representative of the estate of Wilfredo Justiniano, Jr.,<br><br>         Plaintiff,<br>v.<br><br>STEPHEN V. WALKER and TIMOTHY P. ALBEN,<br><br>         Defendants. | Civil Action No. 15-cv-11587-NMG |

**REPORT AND RECOMMENDATION REGARDING DEFENDANT TIMOTHY ALBEN'S MOTION TO DISMISS AND DEFENDANT STEPHEN WALKER'S MOTION TO DISMISS**
**(Dkt. Nos. 9 and 23)**

CABELL, U.S.M.J.

On June 14, 2013, Wilfredo Justiniano Jr. was killed following an encounter with Massachusetts State Police Trooper Stephen Walker ("Trooper Walker"). The plaintiff, Damaris Justiniano, has brought suit as the personal representative of Justiniano's estate against Trooper Walker and his supervisor, MSP Colonel Timothy Alben ("Colonel Alben"). Trooper Walker moves to dismiss one of the two counts against him while Colonel Alben moves to dismiss both counts against him. (Dkt. Nos. 23 and 9). For the reasons discussed below, I recommend that Defendant Walker's motion to dismiss be denied, but that Defendant Alben's motion to dismiss be granted.

I.     **RELEVANT FACTUAL BACKGROUND**

The facts are taken from the complaint and are accepted as true for purposes of the present motions. Trooper Walker was at all relevant times a Massachusetts State Police Officer. On June

14, 2013, at approximately 8:00 A.M., Trooper Walker responded to a call for medical assistance on Route 28 near the Milton-Quincy line.  The call for assistance arose from a 911 call from Ms. Karen Kryiakides.  She had phoned 911 to report that she had been following Justiniano's erratically moving vehicle.  When he pulled over to the side of the road she did too, and she then left her car to check on him.  She stated that he appeared distraught and she worried he might be having a heart attack.

Upon his arrival Trooper Walker saw Justiniano's car off to the side of the road, behind Ms. Kryiakides' car.  Justiniano was standing between the two vehicles.  He appeared distraught and Trooper Walker called for backup because he had a "bad feeling" about the situation.  But, instead of waiting for backup to arrive, Trooper Walker left his cruiser and approached Justiniano. Justiniano was unarmed and was not suspected of having committed a crime.

As Trooper Walker approached him, Justiniano stated that he was an "undercover cop" and he asked Trooper Walker to kill him.  Justiniano began approaching Trooper Walker and told Trooper Walker that he was going to kill him.  Trooper Walker in response sprayed Justiniano in the face with pepper spray.  Some of the spray blew back into Trooper Walker's face and affected his vision.  Trooper Walker began to back away from Justiniano but then pulled his gun and "double tapped" it, that is, he fired it twice.  The first shot passed through Justiniano's left wrist and the second shot hit Justiniano in the chest.  Justiniano fell to his knees and then to the ground. Trooper Walker called again for backup and to report that shots had been fired.

Justiniano was lying on the ground with labored breathing but attempted to get up.  Trooper Walker used his foot to knock him back to the ground, and stood over him with his firearm aimed at him until another officer, Trooper Durning, arrived a few minutes later.  The two troopers handcuffed Justiniano and Trooper Durning sprayed him again.  Ultimately, five officers and two

2

firefighters assisted in handcuffing Justiniano.  He was brought to a local hospital and was declared

dead later that morning.  (Dkt. No. 1 at ¶¶ 10-32).


II.    **THE COMPLAINT**

Counts One and Two are directed at Trooper Walker.  Count One alleges a violation under

42 U.S.C. § 1983 of the Fourth Amendment to the U.S. Constitution.[1]  Count Two appears to assert

two separate causes of action.  It alleges a violation under section 1983 of the Fourteenth

Amendment (as opposed to the Fourth Amendment as alleged in Count One), but also alleges a

violation of the Massachusetts Wrongful Death statute, M.G.L. c. 229, § 2.[2]  Trooper Walker

moves to dismiss only Count Two.

Counts Three and Four name Colonel Alben.  Count Three alleges a violation under section

1983 of the Fourth and Fourteenth Amendments, on the ground that Colonel Alben failed as

---

[1] 42 U.S.C. § 1983 provides that:  [e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.  Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. *Albright v. Oliver,* 510 U.S. 266, 271 (1994). It is the plaintiff's burden to identify the particular underlying constitutional or statutory right that has been impacted. In order to prevail in a § 1983 claim a plaintiff must bring forth evidence that (1) the defendant acted "under color of state law" and (2) deprived the plaintiff of a federally protected right.  *Rogan v. City of Boston,* 267 F.3d 24, 27 (1st Cir. 2001).

[2] Counts One and Two could benefit from greater clarity.  The two counts purport by virtue of their subtitles to allege violations of the Fourth and Fourteenth Amendments, respectively, but much of the language in both is identical and both appear to focus on the shooting of Justiniano rather than separate events.  Moreover, both counts allege that Trooper Walker "deprived [Justiniano] of his right to life under the *Fourteenth* Amendment," although the use of that word in Count One may just be a scrivener's error.  (*See* Compl., at ¶¶ 38, 48).  The plaintiff's opposition explains that Count One alleges that Trooper Walker violated Justiniano's Fourth Amendment rights when he unlawfully shot Justiniano "after receiving a call for assistance," while Count Two alleges that he violated Justiniano's Fourteenth Amendment rights when he "willfully and recklessly" shot him "in the chest" and thus "depriv[ed] him of his right to life."  Aside from some different terminology and Count Two's inclusion of the Massachusetts Wrongful Death Statute, it is still not entirely clear what distinguishes Counts One and Two.  Further still, the plaintiff seeks only section 1983 type damages in Count One and by contrast seeks only wrongful death type damages in Count Two.  More, the plaintiff's opposition seems to treat Count Two as alleging really only a violation of M.G.L. c. 229, § 2, going so far as to offer no response at all to the defendant's argument that the portion of Count Two alleging a federal civil rights claim is duplicative of the claim in Count One.  While not fatal here, these concerns should receive more attention.

Trooper Walker's supervisor to provide him with the proper training and resources that would have helped to prevent Justiniano's shooting. Count Four alleges that the same conduct referenced in Count Three also constitutes a violation under 42 U.S.C. § 1983 of the Fourteenth Amendment. It also alleges a wrongful death claim under M.G.L. c. 229, § 2, on the ground that Trooper Alben's failure to provide adequate training led to Justiniano's being shot.[3]

### III.   LEGAL FRAMEWORK

Rule 12(b)(6) motions to dismiss require the Court to "assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). In order to survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1977 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (*quoting Twombly*, 550 U.S. at 556).

Dismissal is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and original alterations omitted). As such, "[t]he relevant inquiry

---

[3] The counts against Colonel Alben are also not entirely unambiguous. Both counts contain much of the same language and both purport by dint of their subtitles to allege section 1983 violations. And curiously, both counts allege (through their subtitles) a violation of the Fourteenth Amendment. But Count Four claims also in the subtitle to include a claim for violation of M.G.L. c. 229, § 2, and the count as a whole focuses solely on that statute. None of the paragraphs within Count Four, for example, speak of a section 1983 violation. In that regard, Count Three seeks section 1983 type damages while Count Four asks only for those damages available to a plaintiff prevailing in a wrongful death suit.

focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Cayo v. Fitzpatrick*, No. CIV.A. 13-30113-TSH, 2015 WL 1307319, at *1 (D. Mass. Mar. 24, 2015) (*quoting Ocasio–Hernàndez v. Fortuño–Burset,* 640 F.3d 1, 13 (1st Cir.2011)).  In determining whether a complaint crosses the plausibility threshold, 'the reviewing Court [must] draw on its judicial experience and common sense.'" *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (*quoting Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937)).  Where "the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  *Morales-Cruz v. Univ. of Puerto Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (*quoting SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## IV.  DISCUSSION

### Count Two States a Valid Claim Against Trooper Walker

Count Two alleges a violation under section 1983 of the Fourteenth Amendment, as well as a claim for wrongful death under M.G.L. ch. 229, § 2.

With respect to the wrongful death claim, which the parties appear to treat as Count Two's principal claim, the statute provides that a "person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, ... shall be liable in damages."  M.G.L. ch. 229, § 2.  As noted, the complaint alleges that Trooper Walker acted "willfully or recklessly."  Trooper Walker argues that he is immune from liability on this claim because the Massachusetts Tort Claims Act (MTCA) "categorically protects public employees acting within the scope of their employment from

liability for 'personal injury or death' caused by their individual negligence." *Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 31 (D. Mass. 2011) (*quoting* M.G.L. ch. 258, § 2).  The plaintiff counters that the MTCA does not protect Trooper Walker here because the complaint alleges that Trooper Walker acted intentionally rather than negligently, and the MTCA does not shield public employees from liability for claims arising out of intentional torts.  The Court agrees.

Under the MTCA, "no ... public employee ... shall be liable for any injury or loss of property or personal injury ... caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." M.G.L. ch. 258, § 2. The statute therefore immunizes public employees from liability for their negligent or wrongful acts committed while acting within the scope of their employment. *See Caisse v. DuBois,* 346 F.3d 213, 218 (1st Cir. 2003) ("Caisse's negligence claims against the Department of Corrections defendants in their individual capacities are barred because the Tort Claims Act shields public employees from personal liability for negligent conduct").  Conversely, section ten of the MTCA exempts public employees from the immunity in section two for claims arising out of intentional torts, and thus renders them potentially liable for an intentional tort.  *See McNamara v. Honeyman*, 406 Mass. 43, 546 N.E.2d 139, 142 (1989) ("[s]ection 10, which provides for exemptions from operation of § 2, among others, states in pertinent part that a public employee shall not be immune from 'any claim arising out of an intentional tort'"); *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 274, 475 N.E.2d 727, 735 (1985) ("[w]hile public employers ... may not be held liable for intentional torts committed by their employees, the employees may be personally liable for any harm they have caused"); *Breault v. Chairman of Bd. of Fire Comm'rs of Springfield,* 401 Mass. 26, 35 (1987).

In the present case, the complaint alleges that Trooper Walker knew Justiniano was in front

of him and yet "double tapped" his firearm in Justiniano's direction, hitting him with both shots, once in the wrist and once in the chest.  If true, these facts would support an inference that Trooper Walker acted willfully with the intent to harm Justiniano.  Although recklessness is considered negligent, rather than intentional, conduct for purposes of the MTCA, willful conduct connotes action intended to do harm and would be viewed as an intentional tort.  *See Kowalski v. Gagne,* 914 F.2d 299, 303 (1st Cir. 1990) ("willful conduct has been described as action intended to do harm, while conduct is wanton or reckless when 'in the face of a known or obvious risk [one] intentionally persist[s] in conduct involving a high degree of probability that substantial harm would result to another.'"); *Stamps v. Town of Framingham*, 38 F.Supp.3d 146, 159 (D. Mass. 2014) (noting that recklessness is considered negligent and implicitly treating willful or wanton conduct as intentional); *Farrah ex rel. Estate of Santana v. Gondella,* 725 F.Supp.2d 238 (D. Mass. 2010) (same).  Accordingly, because the MTCA does not bar claims against a public employee for intentional torts, Count Two states a valid claim for wrongful death.

With respect to the section 1983 claim, Count Two also asserts, without any elaboration, a violation of the Fourteenth Amendment.  Trooper Walker argues that this 1983 claim is repetitive of the 1983 claim asserted in Count One.  As he does not move to dismiss Count One, he reasons that this portion of Count Two is superfluous and therefore should be dismissed.  Although the plaintiff's opposition does not address this argument, the Court finds that the two 1983 claims are not repetitive.

Count One alleges a violation of the plaintiff's Fourth Amendment rights whereas Count Two alleges a violation of the Fourteenth Amendment.  Even assuming that both claims relate principally to Trooper Walker's use of deadly force, there is a distinction between an excessive force claim brought under the Fourth Amendment versus one brought under the Fourteenth.  A

Fourth Amendment claim applies "in the context of arrests, investigatory stops and other seizures, and looks at whether a party's right against unlawful search and seizure has been violated." *O'Connor v. Cintron,* No. 04-05633, 2007 WL 4509156, at *3 (Mass. Super. Oct. 29, 2007); *see Graham v. Connor,* 490 U.S. 386, 397 (1989). Thus, claims that law enforcement officers have applied deadly force in the course of an arrest, investigatory stop, or other seizure of a free citizen "should be analyzed under the Fourth Amendment and its 'reasonable' standard, rather than under a 'substantive due process' approach [when used to target the same underlying governmental conduct.]" *Malden v. City of Waukegan, Ill.,* No. 04-2822, 2005 WL 1139628, at *2 (N.D. Ill May 11, 2005). By contrast, "[c]laims of excessive force by a police officer arising outside the context of a seizure, and thus outside the Fourth Amendment, are analyzed under [Fourteenth Amendment] substantive due process principles." *Cummings v. McIntire,* 271 F.3d 341, 344 (1st Cir. 2001).

In the present case, even accepting that the shooting itself was the most significant event, determining when a seizure has occurred can still be a fact intensive inquiry and it is not self-evident at this juncture at exactly what point the plaintiff's Fourth Amendment interests were implicated. *See, e.g., Connors v. McNulty,* 697 F.2d 18 (1st Cir. 1983) (treating fatal police shooting as 14th Amendment claim); *Brendlin v. California,* 551 U.S. 249, 254 (2007) ("A seizure of a person occurs when, "'by means of physical force or show of authority,'" an officer takes intentional action that "terminates or restrains [a person's] freedom of movement.") (*quoting Florida v. Bostwick,* 501 U.S. 429, 434 (1991). Thus, to the extent there is any ambiguity as to whether and how much of Trooper Walker's conduct occurred before or after the plaintiff was seized, Counts One and Two apply to different events and are not repetitive.

In sum, Count Two states a valid claim for relief.

**Count Three Fails to State a Claim Against Colonel Alben**

Count Three alleges under section 1983 that Colonel Alben violated the plaintiff's Fourth and Fourteenth Amendment rights. Colonel Alben was at all relevant times the MSP superintendent. The complaint alleges that Colonel Alben failed to train MSP officers (including Trooper Walker) regarding how best to treat mentally ill individuals and to respond to mental health related incidents, and that this failure resulted in the plaintiff's death. Colonel Alben argues that he cannot be held vicariously liable for the actions of Trooper Walker. He argues also that the facts fail to demonstrate that he himself violated any of the plaintiff's rights.[4] Colonel Alben argues that he is entitled to qualified immunity in any event.

It is well established that "a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, … [but] he may be found liable under section 1983 on the basis of his own acts or omissions." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994) (*citing Monell v. Dep't of Social Servs*., 436 U.S. 658, 691 (1978)). In that regard, "a supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights." *Id*. (citations omitted). Even where a supervisor acts with deliberate indifference, however, a plaintiff must still "affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Id*. (*citing Bowen v. Manchester*, 966 F.2d 13, 20 (1st Cir. 1992)). The "causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient causal nexus may be found if the

---

[4] Inasmuch as the parties cite case law involving claims against a municipality in arguing over Colonel Alben's potential liability, it bears noting that the legal elements of an individual's supervisory liability and for municipal liability are "similar enough that the same standards of fault and causation should govern." *See Doe v. Taylor Ind. Sch. Dist*., 15 F. 3d 443, 453 (5th Cir. 1994). This is also true where, as here, the complaint alleges that Colonel Alben was acting under color of state law and he is not being sued in his individual capacity.

supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." *Id.* (*citing Larez v. Los Angeles*, 946 F. 2d 630, 646 (9th Cir. 1991); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 902-03 (1st Cir. 1988)).  Stated differently, liability may attach and a causal link can be established when a supervisor is on notice of a history of widespread abuse and fails to take corrective action by training or closely overseeing subordinates.  *Id.* (*citing Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).

In the present case, the plaintiff alleges that Colonel Alben acted with deliberate indifference to the rights of Justiniano by (1) failing to implement a policy for dealing with mental health crises without using lethal force; (2) failing to train officers in how to avoid the use of lethal force during mental health crises; (3) having a policy that affirmatively treats people experiencing a mental health crisis as violent criminals and subjects them to lethal force; (4) failing to train officers on how to de-escalate situations with the mentally ill; and (5) refusing to change the MSP policies.  In support of this broad claim, the plaintiff points to several studies conducted across the country reportedly demonstrating the need for better training because "without it, officers can make a crisis worse, either out of fear or in a reflexive effort to control the situation and enforce compliance." (Complaint, at ¶ 63).   The plaintiff contends that Colonel Alben was aware of the need for better training and his failure to implement that training evinced deliberate indifference and led to the plaintiff's death.

Colonel Alben argues that the complaint falls short of alleging facts sufficient to establish that he acted with deliberate indifference, or that proper training would have prevented Justiniano's death.  The Court agrees.  As an initial matter, "'[t]he liability criteria for 'failure to train' claims are exceptionally stringent …'" *Barker v. City of Boston*, 795 F. Supp. 2d 117, 122 (D. Mass. 2011) (*quoting Hayden v. Grayson*, 134 F. 3d 449, 456 (1st Cir. 1998)).  The complaint contains

several conclusory statements decrying the need for better training regarding the treatment of mentally ill persons, along with assertions regarding the MSP's own inadequate training, and quotes a statement where Colonel Alben apparently acknowledges that "in terms of negotiating with someone with mental health [issues], there is not a great deal of training in law enforcement." (Compl., at ¶ 66). Even taking these allegations as true, however, they "fall short of the requisite showing that [the MSP] had a policy that was 'deliberately indifferent' to the constitutional rights of mentally ill individuals." *Barker*, 795 F. Supp. 2d at 123 (*citing Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Indeed, even assuming that more and better training *is* needed, the plaintiff has failed to allege facts making it plausible that Colonel Alben was "deliberately indifferent to a known risk that [his] officers would use excessive force against [such a] mentally ill individual." *Id*. Pointing to studies conducted elsewhere across the country does not demonstrate that Alben "ignored a known or obvious risk of a highly predictable severe harm." *Id*.

Moreover, even assuming that Colonel Alben acted with deliberate indifference in failing to train MSP officers on how to respond to situations involving mentally ill individuals, the plaintiff has failed to establish that this failure caused Justiniano's death. The complaint alleges that Trooper Walker perhaps acted improperly in light of Justiniano's mental condition but there is no allegation that Trooper Walker's knew that Justiniano suffered from a mental illness, or that his decision to fire his weapon was related to any mental illness that Justiniano may have suffered. *Id*. The complaint "simply alleges that [Walker] approached, fired [his] weapon[ ] at, and killed an unarmed, non-threatening, harmless individual without provocation. If proven, this would be an extreme and tragic case of the use of excessive force, but no reasonable jury could infer from the facts alleged here that further training by [Colonel Alben] regarding how appropriately to deal

with individuals with mental illness would have prevented this shooting." *Id*. The facts are admittedly troubling but they "simply fail to establish a causal nexus between any alleged deficiency of training regarding the treatment of mentally ill individuals and the shooting of [Justiniano.]" *Id*. at 123-24.

Because the Court concludes that Colonel Alben did not act with deliberate indifference in failing to train Trooper Walker and other officers regarding interactions with mentally ill individuals, and because, even assuming he did, there is no basis to infer that the failure led to Trooper Walker's decision to shoot Justiniano, Count Three fails to state a valid section 1983 claim and therefore should be dismissed.[5]


### Count Four Fails to State a Valid Claim against Colonel Alben

Count Four, like Count Two, appears to allege two causes of action, including a wrongful death claim under M.G.L. ch. 229, § 2 and a claim under section 1983 for a violation of the Fourteenth Amendment. Specifically, the complaint alleges that Colonel Alben's "affirmative failures" to "change the policies, procedures, training, and equipment to enable troopers to

---

[5] For the same reasons, Colonel Alben would be entitled to qualified immunity. "The doctrine of qualified immunity protects public employees 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lucia v. City of Peabody*, 971 F. Supp. 2d 153, 163 (1st Cir. 2013) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has set forth a two-part inquiry with respect to determining whether qualified immunity is warranted: (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). The plaintiff asserts that Colonel Alben acted with deliberate indifference to Justiniano's constitutional rights by virtue of his failure to ensure proper training, but the Court concludes here that there is no basis to find that Colonel Acted with deliberate indifference, and therefore rejects this argument. While it is true that Justiniano had a right to be free from the use of excessive force and had a clearly established right to life, Colonel Alben did not violate these rights. He is accordingly entitled to qualified immunity. *Febus-Rodriguez v. Betancourt-Lebron*, 14 F. 3d 87, 94 (1st Cir. 1994) (where supervisors were not callously or recklessly indifferent for purposes of a failure to train claim, the same supervisors were entitled to qualified immunity because the plaintiff failed to demonstrate that the supervisors' violated the plaintiff's constitutional rights); *see also, Bowen v. City of Manchester*, 966 F. 2d 13, 16 (1st Cir. 1992) ("Unless the plaintiff's allegations state a claim of [a] violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." (citation omitted)).

properly interact with the mentally ill deprived Wilfredo Justiniano of his life and civil rights by making the fatal shooting an inevitable outcome of the non-criminal interaction." (Complaint, at ¶ 82).

With respect to the wrongful death claim, Colonel Alben argued in his motion to dismiss that it is barred against him because the MTCA shields public employees from liability for negligent torts.  M.G.L. ch. 258, § 2.  The plaintiff clarified in her opposition that she does not allege negligence.  Rather, she alleges that Colonel Alben's conduct was "willfull, wanton or reckless."  For that reason, she argues, the wrongful death claim alleges an intentional tort which is not immunized under the MTCA.  (Plaintiff's Opposition at p. 20).

With that clarification, the Court concludes that Count Four fails to state a valid wrongful death claim against Trooper Alben.  In order to prove that Colonel Alben acted willfully or wantonly, the plaintiff would essentially need to show that the MSP had a policy that was deliberately indifferent to the constitutional rights of mentally ill individuals.  *See Chapman v. Keltner*, 241 F. 3d 842, 847 (11th Cir. 2001) (*citing Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 n. 13 (7th Cir. 1998)) ("the standard for assessing whether conduct is willful and wanton is 'remarkably similar' to the deliberate indifference standard.").  As discussed above with respect to Count Three, the facts alleged in the complaint fail to support a finding that Colonel Alben acted with deliberate indifference.  Rather, the complaint offers mostly conclusory statements regarding inadequate training and studies conducted in other cities.  It does not, by contrast, contain allegations showing that the Colonel Alben himself ignored a known or obvious risk of a highly predictable severe harm.  *See Barker v. City of Boston,* 795 F,Supp.2d at 123-24.  Moreover, the complaint does not allege facts to show causation, that is, that Trooper Walker shot Justiniano because he had failed to receive training on how to deal with the mentally ill.  Accordingly, Count

Four does not state a valid wrongful death claim.

Finally, Count Four also appears to assert a section 1983 claim for violation of the Fourteenth Amendment.  But the allusion to section 1983 appears only in the heading's subtitle and is not elaborated upon or mentioned in the narrative paragraphs.  To the extent the plaintiff contends that Count Four does in fact assert a section 1983 claim, the claim would appear to be duplicative of the Fourteenth Amendment claim contained in Count Three and therefore should be dismissed.  However, to the extent the plaintiff contends that Count Four's section 1983 claim alleges something different and apart from what is alleged in Count Three, it is impermissibly vague and fails to state plainly why the plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2).  It still should be dismissed in that event, but with leave to amend, assuming there is a good faith basis to do so.

### V.    <u>CONCLUSION</u>

For the foregoing reasons, it is respectfully recommended that Trooper Walker's motion to dismiss be DENIED (Dkt. No. 23), and that Trooper Alben's motion to dismiss be ALLOWED. (Dkt. No. 9).  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.   The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b), will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See*

*Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  August 24, 2016