UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DAMARIS JUSTINIANO, as the Personal Representative of the Estate of WILFREDO JUSTINIANO, JR.,

    Plaintiff,

v.

STEPHEN WALKER and TIMOTHY P. ALBEN,

    Defendants.

C.A. NO.: 1:15–cv–11587–DLC

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO STEPHEN WALKER'S MOTION FOR SUMMARY JUDGMENT**

So far this year, police in the United States have fatally shot 519 people.[1] This case concerns whether qualified immunity should apply to all 519 of those shootings (as well as the roughly three fatal shootings by police per day that will undoubtedly follow), irrespective of the circumstances of the shooting. If qualified immunity is available in *this* case, it will be available in *every* police shooting—thus erasing one of the most important achievements of the civil rights era.

Walker's claim for qualified immunity is entirely based on us giving him the benefit of doubt on all aspects of his story. While Walker is correct that a nonmoving party ordinarily may not survive summary judgment merely by attacking the credibility of

---

[1] *See* Washington Post, Fatal Force, *available at* https://www.washingtonpost.com/graphics/2018/national/police-shootings-2018/?utm_term=.4568f137fa15 (last accessed July 6, 2018).

the other side, he is incorrect in suggesting that his testimony alone can negate reasonable inferences that present triable issues of fact.

In this case, there are several reasonable inferences that foreclose summary judgment in Walker's favor. Walker's attempt to convince this Court to displace inferences in favor of his own testimony—and only his testimony—is all too convenient given that the victim Wilfredo Justiniano did not survive to tell his version of events. Also convenient is that Walker was not outfitted with either a body-cam or a dash-cam. Since we only have Walker's account, relying on his testimony alone would seem to allow for no other finding than qualified immunity. But this Court *must* draw reasonable inferences in favor of the Plaintiff, and those reasonable inferences do not permit a finding of qualified immunity at this stage of the litigation.  The reasonable inferences are: that Wilfredo Justiniano was having a mental health crisis; that he was non-violent and compliant prior to the arrival of Trooper Walker; that whatever Wilfredo Justiniano said—whether it was gibberish or outlandish statements about being an undercover police officer—it was obvious to a reasonable person that he was in the midst of a mental health crisis; that he was unarmed; that he did not represent a physical threat until Trooper Walker chose to pepper-spray him in the face twice; that Trooper Walker had time and space to use his baton if he felt a physical confrontation was imminent; that Trooper Walker could have avoided confrontation by simply maintaining distance (rather than stepping into the roadway); and that Trooper Walker panicked because he pepper-sprayed himself in the eyes, a result of his unjustified decision to use pepper-spray in the first place.

First Circuit jurisprudence and practice require that these claims be tried before a jury. *See e.g. Parker v. Town of Swansea*, 310 F. Supp. 2d 356, 364 (D. Mass. 2004) (holding, after a jury trial, that the officer was not entitled to qualified immunity for shooting an unarmed man who abruptly exited his vehicle in a "combat crouch" shooting stance and turned towards the officers with his hands clasped together in front of him at waistband level, and started to advance towards the officer). Any other outcome would effectively allow police to become judge, jury, and executioner.

## ARGUMENT

Walker's supplemental brief highlights two fundamental problems with his arguments for granting summary judgment in his favor. First, as was evident at oral argument, Walker's argument requires the Court to disregard reasonable inferences drawn in favor of Plaintiff and adopt Walker's version of events, even if his version is internally inconsistent. Second, Walker's claim for qualified immunity dispenses with all objective factors—such as whether the victim was armed, had committed a felony, or was endangering the lives of civilians—and simply requires one subjective factor: did the officer feel scared? This approach not only offends all jurisprudence since *Tennessee v. Garner*, but it also makes it hard to imagine any case where a police officer's own subjective perceptions would not support a finding of qualified immunity—even in cases where the officer's fear was unreasonable, created by the officer himself, or worse, fabricated. Under Walker's approach, qualified immunity would no longer require the weighing of objective factors. This cannot be the law of this country.

### A. Even if Walker's Testimony Were Credited, His Testimony Alone Cannot Defeat Contrary Reasonable Inferences

Fourth Amendment claims of excessive force analysis are highly fact-intensive and call upon the fact finder for a determination of whether the officer's actions were reasonable in light of the entire situation. By nature of this analysis, summary judgment is disfavored in police misconduct cases. *See Glenn v. Washington County*, 673 F.3d 864, 871 (9th Cir. 2011).

As part of the fact-intensive inquiry, Walker asks the Court to ignore two basic inferences that weigh against the reasonableness of his actions: (1) that Walker unnecessarily escalated the situation by pepper-spraying Mr. Justiniano in the face twice simply for allegedly refusing to drop a Bic pen, even though the first spray was unjustified because a Bic pen is not a weapon, and even though the second spray was unjustified because it was evident from the first salvo that pepper-spray accomplished nothing; and (2) Walker felt disabled and panicked as a result of his own unreasonable actions, choosing to use lethal force rather than retreating or using less lethal force like his baton.

It is not dispositive that Wilfredo Justiniano is not alive to contradict Walker's testimony, nor does it matter that the evidence that cuts against a finding of qualified immunity is circumstantial. *See Moreau v. Gerardi*, Civil Action No. 08-40117-FDS, 2010 U.S. Dist. LEXIS 124613, at *16-17 (D. Mass. Nov. 24, 2010) (Saylor, J.) ("The mere fact that Moreau has no recollection of the alleged assault itself does not indicate that there is no genuine dispute of facts; rather, plaintiff's evidence, although circumstantial, is sufficient for a jury to infer that it is more likely than not that Gerardi caused his

4

injuries. In sum, after drawing all reasonable inferences in favor of Moreau, there is sufficient affirmative evidence that a reasonable jury could find that he was injured while in his cell and that an assault by Gerardi was the cause of his injuries.") (internal citations omitted).

*In Moreau*, police arrested the plaintiff for disorderly conduct and disturbing the peace. *Id.* at *1. Moreau arrived at the police station intoxicated but without visible injuries to his face and neck. *Id.* at *1. During his booking and processing, Moreau felt provoked by defendant, a Worcester police officer, and at one point needed to be restrained. *Id.* The officer later escorted Moreau to an unoccupied cell, opened the cell door, and put him inside. *Id.* at *6. The officer banged on clear plastic above the cell door, and the video surveillance system, which had been recording the events up to that point, shut off. *Id.* at *7. Moreau claimed that at that moment, he fell unconscious. *Id.* at *1-2, 8. When Moreau regained consciousness, his head was in the cell toilet, and he had a black eye and a bloody cut above his ear. *Id.* at *2, 8-10. Moreau argued that the officer must have caused his injuries. The officer testified that he did not cause Moreau's injuries, and insisted he was entitled to summary judgment because Moreau was "merely" attacking the officer's "credibility." *Id.* at *2. The court disagreed and denied summary, finding that Moreau had put forth an "affirmative version of the facts that differs from defendants' version," even though it was based entirely on "circumstantial" evidence. *Id.* at *16.

Like in *Moreau*, no witness is able to offer direct testimony to dispute an officer's version of events. There is also no video surveillance to reconcile the plaintiff's

5

inferences with the officer's testimony. But also like in *Moreau*, the plaintiff's reasonable inferences bridge the deficit in testimony and show a genuine dispute of material fact over the officer's actions. Here, these inferences show that no force was necessary, that Walker had alternatives to using lethal force, and that Wilfredo Justiniano was merely in need of medical assistance.

To adopt Walker's testimony uncritically would require this Court to ignore several inconsistencies in his testimony. Most significantly, Walker claims that he was unaware that Wilfredo Justiniano had mental health issues. *See* SMF ¶ 103. Yet his other statements contradict this assertion. Walker took the call knowing that it was a medical emergency, rather than a crime. *See* SMF ¶ 92. Walker also claims that Wilfredo stated that he was an "undercover cop" and that "you are 'going to have to kill' me." SMF ¶ 24. If true, those words and the nature of the 911 call leave little doubt that this was a mental health crisis.

Walker's reason for escalating the encounter is also rife with contradiction. Even though Walker was under no requirement to immediately engage Wilfredo, and even though something didn't feel right—so much so that the first thing he did upon arrival was call for backup, Walker inexplicably emerged from his vehicle and used force as the first aggressor. *See* SMF ¶¶ 94, 102. He chose to pepper-spray Mr. Justiniano in the face, even though this was an unjustified use of force that escalated the situation. When the first spray had no apparent effect, Walker unreasonably sprayed a second time, knowing that the pepper-spray would be ineffective and knowing the risk that he may accidentally spray himself in the face. *See* SMF ¶¶ 37, 40. Walker fails to offer any

6

credible reason for failing to de-escalate or use force commensurate with the claimed threat. With his vision impaired, Walker chose not to seek safety. Nor did he use his baton, even though Wilfredo began advancing from a distance of 19 feet—which even at a full sprint would have left sufficient time for a trained officer to reach for his baton. It is undisputed that Walker gave no warning that he would use lethal force, and it is also reasonable to doubt based on Walker's own testimony whether Mr. Justiniano was in any condition to understand the warning. *See* SMF ¶ 43.

Viewing the totality of the circumstances, and drawing all reasonable inferences in favor of Plaintiff, it is reasonable to infer that Walker escalated the situation, unreasonably used pepper spray in a manner that also impaired his own vision, and then fired a gun at a man he couldn't clearly see out of panic. *See Morelli v. Webster*, 552 F.3d 12, 4, 26 (1st Cir. 2009) (Plaintiff "made adequate showing to thwart a qualified immunity defense," even where her "version of the relevant events [was] hotly contested"; the court further noted that "[a] jury might also choose to infer that the defendant, frustrated at the looming failure of the sting operation and the prospect of the plaintiff avoiding arrest, lost his temper and intentionally used more force than the situation warranted"); *see also McKenney v. Mangino*, 873 F.3d 75, 84 (1st Cir. 2017) (affirming the district court's denial of summary judgment where "the district court concluded that a rational jury could reasonably infer both that [the victim] did not pose an imminent threat and that viable remedial measures had not been exhausted"). Not only does Walker admit to "disabling" himself with the pepper-spray he deployed because Wilfredo would not drop a Bic pen (which inherently rings of

7

unreasonableness), but he also seeks to use this "disability" as a crutch to justify his subjective feeling of vulnerability. *See* Walker's Supplemental Memorandum, at 2–3 ("And *Walker's use of force was justified by his disability* – his compromised eyesight and pain from being pepper sprayed.") (emphasis added).

Under these circumstances, to grant immunity to officers who create situations that result in the death of American citizens and allow them to avoid a trial on the merits merely because they say they were fearful offends our Constitution and the values expressed in our Declaration of Independence. *See* The Declaration of Independence (U.S. 1776) (protesting the king's protection of armed troops, "by a mock Trial, from punishment for any Murders which they should commit on the Inhabitants of these States").

### B. Granting Walker's Motion for Summary Judgment Will Result in Blanket Immunity for All Cases

Granting Walker's motion for summary judgment in this case—which lacks any objective grounds for the use of lethal force—will effectively mean that all shootings, no matter how questionable, are protected by qualified immunity. If an officer is entitled to qualified immunity for killing an unarmed, mentally-ill man, who committed no crime, posed no threat to civilians, and was not subject to lawful arrest, when would an officer ever *not* be entitled to qualified immunity? If all that is needed is an officer's (self-serving) perception about what household items constitute a "weapon" and what manner of approach by a subject who is 19 feet away constitutes a physical threat, then there will be no need to consider any other factors. The population that will be imperiled in police interactions will no longer be limited to felons, arrest subjects, or

people armed with guns. Every man, woman, and child in this country, from every walk of life, will simply be one step removed from an immunized killing at the hands of police. This is a line that courts with good reason have refused to cross. *See e.g. Parker v. Town of Swansea*, at 364.

We must remind ourselves that if a civilian had shot and killed Wilfredo Justiniano under these same circumstances, that person would have been charged with murder. But Walker is not a civilian. And the legal authorization that allows him to lawfully carry a gun armed and confront people in crisis even where no crime had been committed is not a blank check. To receive qualified immunity, Walker's actions had to be reasonable.  Walker should not be able to avail himself of summary judgment because there is evidence that his actions were unreasonable. Walker tries to thread the needle by narrowly distinguishing his case from First Circuit decisions where qualified immunity was rejected, while at the same time avoiding any reference to adverse factual inferences that negate the reasonableness of his actions. In essence, Walker argues that the traditional objective factors considered in qualified immunity cases are superfluous. All we have to do is ask the officer if he felt scared for his safety. This cannot be right.

Walker's argument also obliterates another key factor that must considered: whether there was obvious evidence of a mental health crisis. When officers confront a mentally ill person, rather than someone suspected of or in the act of committing a crime, the government's interest in using force is greatly diminished. *See Glenn v. Washington County*, 673 F.3d 864, 871, 875–78 (9th Cir. 2011). In *Glenn*, where the victim's

"family did not call the police to report a crime at all, but rather to seek help for their emotionally disturbed son," the Ninth Circuit concluded that summary judgment was improperly granted in favor of the officers because there was a disputed issue of fact "whether the officers were or should have been aware that [the victim] was emotionally disturbed." *Id*. This is the reason that Walker disputes having any knowledge that Mr. Justiniano was mentally ill. But by his own testimony, there is a material issue of fact whether this assertion is reasonable on its face. Just as in *Glenn*, a concerned member of the public called the police to *help* Mr. Justiniano. The concerned person made no report of any crime, and Mr. Justiniano had been compliant and non-violent with that person. But Walker arrived and quickly escalated the situation, rather than providing Mr. Justiniano with the medical assistance he needed.

These reasons highlight specifically why summary judgment "in excessive force cases should be granted sparingly." *Glenn*, 673 F.3d at 871, quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). These kinds of cases "nearly always require[] a jury to sift through disputed factual contentions, and … draw inferences therefrom." *Id*. This case is no exception.

This case also highlights why qualified immunity has become "ill-suited and unnecessary," allows for dismissal of cases alleging "clearly unconstitutional behavior" such as lethal force cases, and needs to be revisited. *See* Joanna Schwartz, *How Qualified Immunity Fails*, 127 Yale L. J. 2 (2017); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1872 (2017) (Thomas., J., concurring in part and concurring in the judgment) ("In an appropriate

10

case, we should reconsider our qualified immunity jurisprudence."). In any event, Plaintiff's claims cannot be disposed of on summary judgment.

### C. There Is No Authority to Support the Argument that Qualified Immunity Automatically Provides a Complete Defense to Plaintiff's Wrongful Death Claim

Walker argues that a grant of qualified immunity *a fortiori* must also provide a complete defense to Plaintiff's wrongful death claim under Massachusetts law. There are two problems with this argument. First, it lacks any authority or citation. What Walker raises is effectively a preemption argument, but absent any express or implied preemption—neither of which are present—federal law cannot displace state law. *See e.g. Yamaha Motor Corporation, U.S.A. v. Calhoun*, 116 S. Ct. 619 (1996). Any preemption argument is especially dubious because the phrase "qualified immunity" appears nowhere in Section 1983. Thus Congress cannot possibly have intended for qualified immunity to preempt state wrongful death actions. To the contrary, qualified immunity is a judge-made doctrine that uniquely applies to civil rights claims brought under federal law. To expand it to state causes of action would not only be a breath-taking expansion of the doctrine, but it would ignore the language of the very Supreme Court decisions that created it.

Second, Walker's argument that qualified immunity would bar a wrongful death claim compares apples to oranges. Qualified immunity is based on an objective evaluation of conduct; it ignores a governmental employee's subjective state of mind. *See Harlow v. Fitzgerald*, 457 U.S. 800, 817-20 (1982). But what would happen if a governmental employee killed someone with subjective malice? Do we ignore the

11

employee's own subjective intent? Does he avoid a jury trial because the most analogous case was decided after the killing or there were "extraordinary circumstances"? *See Harlow*, at 818-19. Walker's bedrock assertion that qualified immunity equates to a finding that "Walker's actions were justified" is simply false. Qualified immunity is an excuse, not a justification. Indeed, it is recognized that a "government official who has acted in a clearly unconstitutional manner can be shielded from liability simply because no prior case has held similar conduct to be unconstitutional." *See* Schwartz, at 66. While it is "high time" that qualified immunity in its present form be put to pasture, s*ee id.* at 12 ("The Supreme Court has written [in *Anderson v. Creighton*, 483 U.S. 635, 642 n.3 (1987)] that evidence undermining its assumptions about the realities of constitutional litigation might "justify reconsideration of the balance struck" in its qualified immunity decisions.  Given my findings, it is high time for the Supreme Court to reconsider that balance."), we should certainly not permit the doctrine to expand its territory and begin trampling state law claims.

In sum, Walker's new argument to dispose of the wrongful death claim fares no better than the ill-fated and erroneous argument briefed in his original motion papers. This argument should thus be roundly rejected.

## CONCLUSION

For the foregoing reasons, and for those set forth in Plaintiff's previously-submitted opposition and at oral argument, Walker's motion for summary judgment should be denied.

12

Respectfully submitted,

PLAINTIFF DAMARIS JUSTINIANO,
By her counsel,

Dated: July 6, 2018

/s/ Ilyas J. Rona
Ilyas J. Rona, Esq. (BBO# 642964)
Kasey A. Emmons, Esq. (BBO# 697229)
MILLIGAN RONA DURAN & KING LLC
50 Congress Street, Suite 600
Boston, Massachusetts 02109
(617) 395-9570
ijr@mrdklaw.com
kae@mrdklaw.com

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and by first class mail to any non-registered participants.

Date:  July 6, 2018

/s/ Ilyas J. Rona
Ilyas J. Rona