# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAMARIS JUSTINIANO, as the Personal Representative of the Estate of WILFREDO JUSTINIANO, JR.,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN WALKER and TIMOTHY P. ALBEN,<br><br>Defendants. | No. 15-cv-11587-DLC |

## ORDER ON PLAINTIFF'S MOTION TO VACATE JUDGMENT

CABELL, U.S.M.J.

### I. INTRODUCTION

This court previously entered judgment in favor of defendant Trooper Stephen Walker after granting his motion for summary judgment. (D. 90. 92). The plaintiff moves to vacate the judgment on the ground of newly discovered evidence. (D. 97). For the reasons explained below, the motion is denied.

### II. RELEVANT BACKGROUND

Following the unfortunate fatal shooting of Wilfredo Justiniano by defendant Massachusetts State Trooper Stephen Walker during a roadside incident, Damaris Justiniano as personal representative of his estate brought suit against Trooper Walker,

Walker's superior Colonel Timothy Alben and, in a separate state court action, the Massachusetts State Police. As it concerns Trooper Walker and this matter, the plaintiff's principal claim was that Trooper Walker violated Justiniano's Fourth Amendment right to be free from the use of excessive force.

Walker moved for summary judgment on the ground that he acted reasonably and would regardless be entitled to qualified immunity. In considering the motion, the court relied upon evidence from civilian observers, but also relied upon uncorroborated evidence from Trooper Walker that Justiniano wielded a pen as a weapon and made threatening statements to Trooper Walker.[1] The court found based on the entire record that the defendant acted reasonably under the circumstances and therefore did not use excessive force. The court found further that Trooper Walker would enjoy qualified immunity even if his actions were excessive because it would not have been clear to a reasonable officer in his position that his actions were unlawful. The court accordingly granted the defendant's motion for summary judgment.

Justiniano timely appealed to the First Circuit Court of Appeals. Well into the appellate process, however, after briefing and oral argument, the plaintiff moved pursuant to Fed. R. Civ. P.

---

[1] Although no witness testified to seeing Justiniano wielding a pen, a pen was found at the scene. Also, while civilian witnesses saw Justiniano and Walker talking, none of them could hear what was being said.

60 to have this court set aside its judgment on the ground of newly discovered evidence, namely evidence from Trooper Walker's personnel file tending to suggest that he has on prior occasions been untruthful when faced with discipline procedures arising from incidents of misconduct. (D. 97).

This court denied the motion on the ground that the court lacked subject matter jurisdiction to act where the case was pending on appeal. (D. 100). The plaintiff appealed that ruling as well and the Court of Appeals in response vacated this court's denial, and remanded the matter with instructions to construe the plaintiff's motion as one under Fed. R. Civ. P. 62.1, which *inter alia* would permit the court to deny the motion or alternatively indicate whether it would grant the motion. (D. 106).

With respect to the substance of the pending motion, the plaintiff asserts that she discovered new material evidence in connection with a separate but factually related matter pending in the Massachusetts state superior court. *See Justiniano v. Department of State Police*, No. 1684CV00399 (Mass. Super. Ct. Suffolk Co. filed Feb. 5, 2016).[2] (For reference, the present federal action was commenced almost a year earlier than the state court action, on April 14, 2015). Of relevance here, and as the

---

[2] The plaintiff also filed a medical malpractice action against the physicians who treated Justiniano after he was shot. This case was eventually consolidated with the State Police case.

parties acknowledged at the hearing on the present motion, the parties had agreed that four or five depositions, including that of Trooper Walker, would be cross-noticed. Trooper Walker was deposed on December 14, 2017.

The plaintiff contends specifically that on June 25, 2019 she received through discovery in the state court action portions of Trooper Walker's personnel file. She asserts that the file contains evidence indicating that the defendant was accused of some misconduct on two prior occasions and in each case offered explanations which his superiors or investigating officer did not believe. The plaintiff also discovered that although Trooper Walker testified in his deposition for this case that he filed a use of force report in connection with Justiniano's shooting, the State Police informed the plaintiff through the state court action that it could not find any such report, suggesting, so the plaintiff contends, that Trooper Walker made a false statement and that no report was in fact ever filed. (D. 105-8).

The plaintiff argues that the evidence shows that Trooper Walker has a history of fabricating stories when he knows his conduct is under investigation. She argues that his credibility in the present case is suspect in light of this evidence, and that this court therefore can no longer credit his uncorroborated statements about what transpired between him and Justiniano. The

4

plaintiff argues that without the force of Trooper Walker's statements, genuine issues of fact exist as to whether he acted reasonably when he used pepper spray and/or shot Justiniano.[3] Consequently, the court's order of summary judgment should now be vacated.

Walker demurs and advances three reasons why the plaintiff's motion should be denied. First, the plaintiff cannot show under Rule 60(b)(2) that she could not have discovered the evidence earlier by exercising due diligence. Second, even if she could, the evidence in the record supports the court's decision that Trooper Walker acted reasonably even if his uncorroborated statements are excised from the calculus. Third, Trooper Walker would still be entitled to qualified immunity in any event. As

---

[3] It bears noting that the parties have for apparently different reasons shifted the focus of this case from the reasonableness of the actual shooting to the reasonableness of the first use of pepper spray. Previously, the plaintiff's principal claim was that Trooper Walker used excessive force when he shot Justiniano. That was clearly the thrust of the complaint, although the plaintiff notes that the complaint did in at least in part reference the use of pepper spray as improper. The shooting was also clearly the focal point of interest throughout the summary judgment process. Indeed, no party argued that the first use of pepper spray should factor meaningfully into the court's analysis and no party thereafter challenged the court's reasoning in its summary judgment decision as improperly focusing on the propriety of the shooting rather than the first use of pepper spray. On appeal and in the present litigation, however, the plaintiff has without much fanfare made the first use of pepper spray the critical moment, and the defendant has responded in kind, again for apparently different reasons. As this court noted at the hearing, though, it is not clear whether this shift in the context of the appeal and present motion is permissible, impermissible or of no consequence, particularly where the plaintiff acknowledged at the hearing that he was not purporting to change his theory of liability on the basis of the new evidence. Because the court decides ultimately that the new evidence would not in any event alter the court's prior decision, it is not necessary to consider this issue further.

discussed below, the court agrees that the plaintiff has not shown satisfactorily that she could not have through the exercise of diligence discovered the evidence sooner than she did. Even assuming she could, the court finds that it would conclude that qualified immunity applies even if it incorporated the force of the new evidence by ignoring the defendant's uncorroborated statements.

### III. **LEGAL FRAMEWORK**

Federal Rule of Civil Procedure 60(b)(2) entitles a party to relief from summary judgment based on newly discovered evidence if (1) the evidence has been discovered since the judgment; (2) the evidence could not by due diligence have been discovered earlier by the movant; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it would probably change the result were a new trial to be granted. *Mitchell v. United States,* 141 F.3d 8, 18 (1st Cir. 1998). The movant bears the burden of satisfying each of these criteria. *U.S. Steel v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 52 (1st Cir. 2002).

A party who argues that newly discovered evidence warrants relief from a judgment must, at the very least, offer a convincing explanation as to why the party could not have proffered the crucial evidence at an earlier stage of the proceedings. Fed. R. Civ. P. 60(b)(2); *see Karak v. Bursaw Oil Corp.*, 288 F.3d 15 (1st

Cir. 2002). "In order for evidence to be newly discovered, the party seeking a new trial must be unaware of the existence of the evidence before or during the trial." *Kettenbach v. Demoulas*, 901 F. Supp. 486, 494 (D. Mass. 1995).

The parties here dispute whether the plaintiff has satisfied the second (due diligence) and fourth (materiality) criteria. The plaintiff acknowledged at the hearing that she was aware of Trooper Walker's personnel file long before the defendant moved for summary judgment but had no basis to be aware that the file might contain evidence that Walker was untruthful when faced with discipline, or that he made misrepresentations in his deposition.

The defendant counters that the plaintiff knew about the personnel file from the outset of the case. The defendant notes that the plaintiff sought discovery of the file no later than February 2017 (about a year before the defendant moved for summary judgment on February 15, 2018 (D. 58)), and did not follow up with a more narrow request or a motion to compel when the defendant objected to producing or agreeing to have the State Police produce his entire personnel file, and also did not ask this court to delay ruling on the defendant's motion for summary judgment.

As discussed below, the plaintiff is not entitled to relief under Rule 60(b)(2) because she has not shown that the evidence concerning Trooper Walker's alleged misconduct and false

7

statements could not have been discovered sooner than it was. Even assuming *arguendo* that the plaintiff met the rule's requirements, the new evidence does not alter this court's conclusion that Trooper Walker would nonetheless be entitled to qualified immunity even assuming his conduct were found to violate Justiniano's rights.

**IV. DISCUSSION**

   **A. Due Diligence**

A brief summary of the discovery in the federal and state court actions as it relates primarily to the issue of Trooper Walker's personnel file helps to place the due diligence issue in context.

In May 2016 the plaintiff made over 100 document requests in the state court action. These requests presumably included one for Trooper Walker's personnel file because the State Police subsequently informed the plaintiff that it needed Trooper Walker's consent to produce the file, which he declined to give.

Several months later, in February 2017, the plaintiff served written discovery requests on Trooper Walker in this matter and among other things requested the defendant's entire personnel file. Trooper Walker objected on the grounds of overbreadth and relevance where his career had spanned 29 years.

8

Several more months later, in September 2017, the plaintiff followed up on her state court action document request and informed the State Police that she would submit narrower requests. However, the State Police claim that the plaintiff's new requests, sent in November 2017, essentially duplicated her May 2016 requests. (D. 110-4).

On November 17, 2017, the parties conducted a "Rule 9" discovery conference in the state court action. Trooper Walker's counsel attended the conference as well. The defendant's counsel continued to object to producing the defendant's entire personnel file. Counsel moreover noted that the State Police would be the better source to seek the records from because they maintained more thorough records than the defendant did. However, the parties did agree that the State Police would produce the defendant's disciplinary history pursuant to a federal subpoena.

Between mid-November and mid-December 2017, the state police produced Trooper Walker's disciplinary history in the form of a summary of all discipline taken against him. However, the summary did not include any details on the investigation of disciplinary matters.

On December 8, 2017, Trooper Walker formally responded to the plaintiff's request for documents in the present federal action;

he objected to producing his entire personnel file on the grounds of overbreadth, vagueness, and relevance.

On December 14, 2017, the plaintiff deposed Trooper Walker.

On January 15, 2018, and after three extensions, fact discovery closed in the present federal action.

On February 15, 2018, Trooper Walker moved for summary judgment. Oral argument took place on May 1, 2018.

Following the hearing, the plaintiff on May 7, 2018 contacted Trooper Walker's counsel to ask anew if he would consider producing the defendant's personnel file, presumably in connection with the state court action. Similarly, on May 15, 2018, the plaintiff contacted counsel for the State Police and asked again for Trooper Walker's personnel file.

Between May 9 and August 28, 2018, the parties filed post-hearing memoranda in this matter; none of it implicated any discovery concerning Trooper Walker's personnel file. (D. 85-89).

On September 30, 2018, the court granted the defendant's motion for summary judgment. (D. 90, 92). On October 15, 2018, the plaintiff filed a notice of appeal. (D. 93).

Some six months or so later, in May 2019, the plaintiff moved in the state court action to compel the production of Trooper Walker's personnel file. In June 2019 the state court

granted the motion and compelled the production of any use of force reports filed by Trooper Walker as well as his performance reviews and disciplinary incident reports from 2010-2013. On June 25, 2019, the State Police produced the documents.

Against this backdrop, it is clear that the plaintiff expended some effort to obtain the defendant's disciplinary records. The court finds that that effort, however, was less than diligent for purposes of the federal action.

Among other things, the plaintiff had by February 2017 requested Trooper Walker's personnel file in both the state and federal matters and been told that Trooper Walker objected to its disclosure. Several months went by before the plaintiff in September 2017 resumed her efforts to obtain the discovery by agreeing to submit narrower requests in the state court matter, something she then apparently failed to do.

In late November the parties apparently agreed that the State Police would produce the defendant's disciplinary history pursuant to a federal subpoena, and records were produced around mid-December 2017, but those records consisted of a summary of disciplinary actions taken against Trooper Walker but did not include any details on the investigation of disciplinary matters.

Thereafter, over the course of the next several months, the plaintiff deposed the defendant (December 14, 2017), the defendant moved for summary judgment (February 15, 2018), and the parties argued summary judgment (May 1, 2018). During that span, however, there is no indication that the plaintiff ever resumed efforts to obtain further discovery, although it was clear to all that the personnel file issue was unresolved.

Indeed, the plaintiff one week after argument on the summary judgment motion (May 7, 2018) contacted the defendant's counsel to ask anew if he would consider producing the defendant's personnel file, presumably in connection with the state court action. The plaintiff also contacted the State Police a week after that (May 15, 2018) to ask for the same thing. While one might look at this as reflecting a continued if not sporadic effort to obtain the discovery, the plaintiff then did nothing further for essentially the next year; it was not until May 2019 that the plaintiff took actual steps to obtain the discovery through a motion to compel in the state court matter.

In sum, the plaintiff knew as late as December 2017 that she did not have all of the discovery regarding Trooper Walker's disciplinary history. The plaintiff was in a position then to seek relief from this court to compel production of the

discovery but the plaintiff went on to depose Trooper Walker without resolving this issue, and then allowed fact discovery to end (January 15, 2018) without taking action.  Instead, the plaintiff renewed her requests for the discovery only several months later, in May 2018, after oral argument on the summary judgment motion.  Even then, though, the plaintiff did not follow up on her requests or take any further action to obtain the discovery, in either state or federal court, until she filed the state court motion to compel a year later in May 2019.

When asked by this court why no steps were taken sooner in the federal action to compel discovery or delay summary judgment, counsel responded that he "didn't want to throw spaghetti at the wall," and that the defendant's counsel kept representing that he would look into what records the defendant was willing to produce. These reasons help to understand why the plaintiff failed to take more concerted action but they do not justify that inaction where it is now evident that counsel could have taken concrete steps in 2017 (if not 2016) to obtain the discovery. *See Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 316 (5th Cir. 2017) (due diligence not shown where plaintiff was aware that certain devices had been used in his surgery but defendant had not produced documentation on those devices and plaintiff never followed up discovery request); *Zurich North America v. Matrix Service, Inc.*,

426 F.3d 1281, 1291-92 (10th Cir. 2005) (while a party's withholding of documents may have violated the spirit of Rule 26, where the party seeking discovery was aware documents had not been produced but never sought to compel these documents or postpone determination of summary judgment, diligence was not shown).

In sum, the court finds that the plaintiff has failed to meet her burden under Fed. R. Civ. P. 60(b)(2) to show that the evidence could not by due diligence have been discovered earlier than it was. The plaintiff's motion to vacate therefore fails. *U.S. Steel v. M. DeMatteo Constr. Co.*, 315 F.3d 43, 52 (1st Cir. 2002).

### B. Qualified Immunity

Even assuming *arguendo* that the plaintiff could show she exercised reasonable diligence, the plaintiff would still have to show that the new evidence would probably change the outcome of the summary judgment motion. The court finds in that regard that even if the new evidence were incorporated and Trooper Walker's uncorroborated statements were removed from consideration, he would still be entitled to qualified immunity.

Qualified immunity shelters government officials from civil liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McKenny v. Mangino*, 873

F.3d 75, 80 (1st Cir. 2017)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

Courts generally analyze qualified immunity claims under a two-step approach that first requires the plaintiff to identify "'controlling authority' or a 'consensus of cases of persuasive authority'" that communicates "a clear signal to a reasonable official that certain conduct falls short of the constitutional norm." *Alfano v. Lynch,* 847 F.3d 71, 76 (1st Cir. 2017) (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Second, the court must determine "whether an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." *Id.*

Courts have discretion however to bypass the first step of this analysis and proceed directly to the second. *See Penate v. Hanchett,* No. 19-1187, 2019 WL 6798883, at *5 (1st Cir. Dec. 13, 2019). The court does so here.

While qualified immunity cannot protect Trooper Walker from liability if, on an objective basis, no reasonably competent officer would have acted as he did, "if officers of reasonable competence could disagree on [the lawfulness of the alleged conduct], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, the defense of qualified immunity

15

"provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Id.* at 349.

Here, assuming that Trooper Walker's use of pepper spray or his firearm constituted unreasonable force, and that the right to be free from such force was clearly established in June 2013, the relevant inquiry for qualified immunity purposes is whether a reasonable, similarly situated officer would have understood Trooper Walker's conduct to violate Justiniano's rights. Viewing the facts in a light most favorable to the plaintiff, the court finds that a reasonable officer would not have clearly understood Walker's conduct to be unreasonable. The uncontested facts (minus Trooper Walker's testimony) establish that:

1. Justiniano was acting erratically before Trooper Walker arrived at the scene. Karen Kyriakides had seen him pull off Route 28 during the morning rush hour after witnessing him driving erratically, and when she stopped to see if he was OK, he emerged from his car and spoke unintelligibly to her;

2. Kyriakides found Justiniano confused and distraught, and when she called 911, she asked the dispatcher "to send somebody out because I was scared for the man and anybody else driving by." She locked her car doors as she waited because she "was a little scared because [she] didn't know what this man was capable of."

3. While she was waiting, Kyriakides saw Justiniano exit his vehicle again, pace around his car, and throw his arms in the air while tilting his head back. At one point, she feared he would walk into the road.

4. After Trooper Walker arrived, Kyriakides and two other witnesses saw Trooper Walker using hand gestures consistent

with trying to calm Justiniano down, indicating that Justiniano remained or at a minimum appeared agitated and distraught. None of the witnesses saw Justiniano complying with Trooper Walker's gestures.

5. One witness, Jo Ann Silva Winbush, saw Trooper Walker pepper spray Justiniano twice. She reported that the first pepper spray happened after Trooper Walker had backed into Route 28 right in front of her vehicle to maintain distance from Justiniano.

6. Kyriakides, Winbush, and another witness all said Justiniano was lunging at Trooper Walker and approaching him aggressively with clenched fists just before Walker shot Justiniano.

Based on the foregoing, an objectively reasonable officer in Trooper Walker's position would not have understood that emitting a burst of pepper spray to retard Justinano's movements violated his rights. On the contrary, the undisputed facts demonstrate that Justiniano appeared agitated and distraught when Trooper Walker arrived, Trooper Walker tried to calm him down by holding up his hands, Justinano did not comply, and Trooper Walker used the pepper spray only after he was forced to back up into Route 28.[4]

To be sure, the plaintiff cites to *Gray v. Cummings*, 917 F.3d 1 (1st Cir. 2019) for the proposition that a subject's mental

---

[4] As noted above, the plaintiff focuses principally on the first use of pepper spray and thus does not address whether, assuming Trooper Walker's testimony is ignored, he would or would not be entitled to qualified immunity with respect to the shooting. To the extent it matters, this court finds that Trooper Walker would still be entitled to qualified immunity with respect to the shooting where there is no dispute that Justiniano aggressively lunged at him with clenched fists after the second use of the pepper spray.

17

illness must be taken into account when determining the amount of force that is reasonable. However, the court in *Gray* actually found that a reasonable officer in May 2013 could have determined that a single use of a taser at its lowest setting to quell a non-violent, mentally ill subject who was resisting arrest did not violate the Fourth Amendment. *Id.* at 12. Similarly, this court would find that a reasonable officer in Trooper Walker's position in June 2013 could have determined that using a single burst of pepper spray on a non-compliant, sometimes pacing, distraught individual adjacent to a busy highway did not violate the Fourth Amendment.

V. **CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion to Vacate Judgment (D. 97) is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: December 24, 2019